IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| PREMESSA JENKINS, by and for TAMIA JENKINS,<br><br>    Plaintiffs,<br><br>v.<br><br>BUTTS COUNTY SCHOOL DISTRICT,<br><br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 5:15-CV-30 (MTT)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>ORDER</u>

Defendant Butts County School District has moved for judgment on the record. (Doc. 16).  For the following reasons, the Defendant's motion is **GRANTED**.

## I.    PROCEDURAL BACKGROUND

Plaintiff Premessa Jenkins ("Jenkins") alleges the Defendant failed to provide her disabled child, Tamia Jenkins ("T.J."), with a free and appropriate public education ("FAPE") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400,[1] and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  (Doc. 5 at 6). Jenkins also alleges that the District retaliated against T.J. by "making false reports to the Department of Family and Children Services [('DFCS')]" and by "disrob[ing] T.J. to examine her from head to to[e], [ ] diagramm[ing] any alleged marks, scars and/or injuries, and further present[ing] those items to the ALJ, making private information

---

[1] "Congress generally amended IDEA by enacting the Individuals with Disabilities Education Improvement Act of 2004, Pub.L. No. 108–446, 118 Stat. 2647 ('IDEIA'), which took effect on July 1, 2005.  The statutory citations in this Order refer to IDEA as recodified by IDEIA."  *G.J. ex rel. E.J. v. Muscogee Cty. Sch. Dist.*, 704 F. Supp. 2d 1299, 1302 n.1 (M.D. Ga. 2010).

readily available for public consumption, violating the Plaintiff[']s right to privacy 5 U.S.C. [§] 552a." (*Id.* at 3-4).

Jenkins first alleged the Defendant failed to provide T.J. with a FAPE in a suit filed on September 1, 2011. *Jenkins v. Butts County*, No. 5:11-cv-350 (MTT). The Court dismissed the complaint without prejudice because Jenkins failed to request a due process hearing pursuant to the administrative requirements of IDEA. *Jenkins*, No. 5:11-cv-350 (MTT), Doc. 19; *see also* 20 U.S.C. §§ 1415(i)(2)(A), 1415(l). After Jenkins filed a *pro se* due process complaint against the Defendant, and an Administrative Law Judge ("ALJ") dismissed her complaint, Jenkins filed another suit with this Court on February 7, 2013. *Jenkins v. Butts Cty. Sch. Dist.*, 984 F. Supp. 2d 1368, 1372 (M.D. Ga. 2013). The Court denied the Defendant's motion to dismiss and remanded Jenkins's claims to the ALJ to analyze when Jenkins's claims accrued and whether any tolling exception applied. *Id.* at 1378-79, 1381.

Jenkins filed a second due process hearing request on October 3, 2014, alleging the Defendant retaliated against T.J. (Doc. 19-2 at 128, 133-40). After consolidating the remanded case and second due process hearing request, the ALJ conducted a hearing on November 6, 2014 regarding the statute of limitations and then a second hearing on December 2, 2014 regarding the merits of the FAPE and retaliation claims. (Docs. 19 at 1; 19-1 at 13; 19-2 at 127). Jenkins brings the instant suit as "an appeal" of the ALJ's decisions. (Doc. 5 at 1). Along with her complaint, Jenkins has submitted a copy of the ALJ's January 22, 2015 Final Decision, which denies her request for relief under IDEA. (Doc. 1-1). The Defendant has moved for judgment on the record,

contending the ALJ's decision should be upheld and the appeal dismissed.  (Doc. 17 at 6).

## II.      THE ALJ'S FINAL DECISIONS

Because the ALJ bifurcated the issues into two separate hearings, the ALJ issued two opinions with separate findings of fact and conclusions of law.  (Docs. 1-1 at 2-13; 19-1 at 164-75).

### A.  The ALJ's Decision on the Statute of Limitations

After the statute of limitations hearing, the ALJ made the following findings of fact.  Jenkins's daughter T.J. has a "profound intellectual disability, a speech and language disorder, and a seizure disorder."  (Docs. 19-1 at 165 ¶ 2; 19 at 17:17-18:6, 63:18-20, 93:12-15).  T.J. is nonverbal, has difficulty communicating, is not toilet-trained, and can be "aggressive and dangerous to herself and others."  (Docs. 19-1 at 165, ¶ 2; 19 at 18:3-19, 91:19-93:9, 98:1).  When she was three years old, T.J. began attending school in Butts County and received special education services pursuant to IDEA.  (Docs. 19-1 at 165 ¶ 1; 19 at 17:6-12).  Jenkins "was a member of [T.J.'s] individualized education program ('IEP') team and participated in the development of her IEPs."  (Docs. 19-1 at 165 ¶ 1; 19 at 40:16-43:16; 19-6 at 10-69).  When T.J began her schooling, she was placed in a "self-contained special education classroom for profoundly intellectually disabled ('PID') students."  (Docs. 19-1 at 165 ¶ 3; 19-6 at 26-27).  But in 2007, T.J.'s seizures increased as well as her aggressive behavior, which escalated to a degree that she was often placed in a restraint chair while other children were around.  (Docs. 19-1 at 165 ¶ 3; 19-6 at 29).

In an IEP meeting on January 17, 2008, the IEP team determined that the PID classroom was no longer appropriate for T.J. because of the severity of her seizures and aggressive behavior.  (Docs. 19-1 at 166 ¶ 4; 19 at 23:18-23; 19-6 at 29, 33).  She was then provided home-based services that consisted of one hour of instruction each day at her aunt's house.  (Docs. 19-1 at 166 ¶ 4; 19 at 24:12-14; 19-6 at 29, 33).  However, on September 2, 2008, the IEP team determined that T.J. had made "minimal progress" toward her IEP goals in this home-based setting.  (Docs. 19-1 at 166 ¶ 5; 19-6 at 33).  The team then placed her in a modified-day program which included private instruction from 3:15 p.m. to 4:45 p.m. with a special education teacher and a paraprofessional.  (Docs. 19-1 at 166 ¶ 5; 19 at 25:10-26:13).  After an IEP meeting on May 27, 2009, the team extended this placement through the end of the 2009-2010 school year.  (Docs. 19-1 at 166 ¶ 5; 19 at 26:14-20; 19-6 at 43-48).

In June 2010, because T.J.'s progress was only "marginal" in the modified-day program, the IEP team increased her instruction to 3.25 hours per day for the 2010-11 school year.  (Docs. 19-1 at 166 ¶ 6; 19-6 at 50-55).  However, in August or September 2010, Jenkins requested that T.J. attend school for the full day.  (Doc. 19-1 at 167 ¶ 6; 19 at 28:2-5).  T.J.'s IEP was then amended on October 7, 2010 to allow her to attend school from 8:00 a.m. to 2:00 p.m. each day.  (Docs. 19-1; 19 at 26:19-27:7; 19-6 at 57).

From November 2006 through April 2014, Jenkins participated at each IEP meeting, was informed about T.J.'s educational placement and services, and was provided a copy of each IEP as well as updated written explanations of her rights as a parent of a child with a disability.  (Docs. 19-1 at 168 ¶ 12; 19 at 43:13-48:2, 56:17-60:3,

69:9-17, 74:4-75:15, 78:2-8, 87:5-88:7, 93:24-95:9, 99:8-100:5; 19-6 at 16-17, 27, 36; 19-7 at 18-72, 19-12 at 1-15).  This parental rights notification included those rights enumerated in 20 U.S.C. § 1415(d), including the rights to examine educational records, to have T.J. educated in the least restrictive environment, to present a complaint by filing a due process hearing request or formal written complaint, and to have the Georgia Department of Education conduct an investigation.  (Docs. 19-1 at 168-69 ¶ 12; 19-6 at 16-17, 27, 36; 19-7 at 18-72; 19-12 at 1-15).  Finally, Jenkins was provided with contact information for resources that could help her understand her rights.  (Docs. 19-1 at 169 ¶ 12; 19-7 at 38, 71-72).  Jenkins did not ask questions about her rights or express dissatisfaction with the Defendant's services until 2010.  (Docs. 19-1 at 169 ¶ 13; 19 at 88:21-89:2, 101:21-22, 104:25-105:3).  T.J. still receives special education services from the Defendant consisting of a "self-contained PID classroom with a special education teacher, two paraprofessionals, and two other children."  (Docs. 19-1 at 168 ¶ 11; 19 at 38:3-15; 19-7 at 16).  Jenkins is satisfied with these services.  (Docs. 19-1 at 168 ¶ 11; 19 at 38:12-15).

Because Jenkins was dissatisfied with the instruction T.J. had received, she submitted a formal state complaint against the Defendant to the Georgia Department of Education in May 2011.  (Docs. 19-1 at 167 ¶ 9; 19 at 48:3-8).  After investigating the complaint, the Department of Education informed Jenkins in a letter that the Defendant had complied with IDEA.  (Docs. 19-1 at 167 ¶ 9; 19 at 48:20-25; 19-7 at 84-86; 19-8 at 1).  The Department of Education also told Jenkins that "[a]ll decisions arising from the complaint are final.  There is no appeal or reconsideration process."  (Docs. 19-1 at 167

¶ 9; 19 at 50:1-7; 19-8 at 1).  On August 10, 2012, Jenkins filed the due process

complaint.  (Docs. 19-1 at 186 ¶ 10; 19-3 at 89-99).

Based on these findings, the ALJ concluded that Jenkins failed to demonstrate

by a preponderance of the evidence that her FAPE claims based on events before

August 10, 2010 were not barred by the statute of limitations or that a statutory tolling

exception applied.  (Doc. 19-1 at 171-75).

**B.  The ALJ's Decision on the FAPE and Retaliation Claims**

After the second hearing, the ALJ incorporated the findings of fact from the order

on the statute of limitations and added the following findings relevant to the FAPE claim

and retaliation claims.  (Doc. 1-1 at 4 ¶ 1).  As to the FAPE claim, the ALJ found that

Jenkins is satisfied with the in-school special education services T.J. has received since

August 10, 2010.  (*Id.* at 5 ¶ 2; Doc. 19-1 at 58:17-59:12).

As to the retaliation claims, on Friday, September 5, 2014, T.J.'s teacher Amy

Clyburn discovered two bugs on T.J.'s jeans and diaper area, reported this to the school

nurse and the principal, and left Jenkins a voicemail.  (Docs. 1-1 at 5 ¶ 3; 19-1 at 107:7-

18).  That following Monday, Clyburn discovered more bugs inside T.J.'s diaper.  (Docs.

1-1 at 5 ¶ 4; 19-1 at 107:22-24).  Clyburn and the principal again left Jenkins a

voicemail.  (Docs. 1-1 at 5 ¶ 4; 19-1 at 108:1-4).  After not hearing from Jenkins, the

principal called the head nurse in the district, and they agreed to follow the district's

head lice policy, which was the only policy about bugs.  (Doc. 1-1 at 6 ¶ 5; 19-1 at

91:24-92:6, 92:21-23, 94:9-19).  This policy stated that infested children will be sent

home with a letter and that "[c]hildren cannot return to school until treatment has been

completed and a letter of clearance from the Butts County Health Department is provided to the school." (Docs. 1-1 at 6 ¶ 6; 19-11 at 147-48).

The letter sent home with T.J. stated that she could not return to school until she provided a clearance letter from a private physician. (Docs. 1-1 at 6 ¶ 5; 19-11 at 111). Because the head lice policy stated that the clearance letter is to be from the health department, Jenkins took issue with the fact she was required to provide a letter from a private physician. (Docs. 1-1 at 6 ¶ 6; 19-1 at 62:7-19). However, the principal testified that a letter from either a private physician or the health department would be sufficient under the policy, and she would have followed a similar protocol for other students. (Docs. 1-1 at 6 ¶ 6; 19-1 at 97:19-20, 99:2-8). The ALJ found the principal's testimony credible. (Doc. 1-1 at 6 ¶ 6). T.J. missed one day of school before returning to school with a clearance letter from her physician. (Docs. 1-1 at 6-7 ¶ 7; 19-1 at 83:3-4, 95:25-96:2).

Clyburn, being a mandatory reporter in Georgia, filed a DFCS report because she was concerned about T.J.'s welfare after finding the bugs. (Docs. 1-1 at 7 ¶ 8; 19-1 at 111:17-22; 19-11 at 106-110). The report detailed the information about the bugs and also provided that T.J. and Jenkins were consistently well-dressed and groomed and that Jenkins "is always open to communications and welcoming of teacher's concerns." (Docs. 1-1 at 7 ¶ 8; 19-11 at 106-110).

A week before the bug incident, Clyburn filed a DFCS report after T.J. expressed unusual behavior. (Docs. 1-1 at 7 ¶ 9; 19-1 at 110:6-9; 19-11 at 101-104). Specifically, T.J. pulled at her pants, said "Stop boy," and appeared to be shooing something away. (Docs. 1-1 at 7 ¶ 9; 19-1 at 110:11-17; 19-11 at 103). Given that T.J. was practically

nonverbal and had never made these vocalizations or behaviors before, Clyburn was concerned about potential abuse. (Docs. 1-1 at 7 ¶ 9; 19-1 at 110:15-111:2, 129:19-24; 19-11 at 101-104). This report also included the same positive observations about Jenkins and her daughter as in the bug report. (Docs. 1-1 at 7 ¶ 9; 19-11 at 104).

Clyburn also began documenting T.J.'s marks and injuries in an outline of the human body. (Docs. 1-1 at 8 ¶ 10 & n.6; 19-1 at 123:1-12; 19-10 at 51-69). Interpreting this practice as a suggestion of abuse, Jenkins believed that the diagramming began in May 2014 and was retaliatory for her filing a complaint. (Docs. 1-1 at 7 ¶ 10; 19-1 at 74:1-23, 123:13-16). However, Clyburn actually began outlining T.J.'s injuries in August 2013, and the Defendant had been documenting T.J.'s marks, injuries, and behaviors for years. (Docs. 1-1 at 8 ¶ 10 & n.6; 19-1 at 123:1-12; 19-8 at 47-101; 19-9 at 1-143; 19-10 at 1-33). Clyburn testified that she documented the injuries she saw in regular observation during a diaper or shirt change and did so to keep track of T.J.'s self-injurious behavior. (Docs. 1-1 at 8 ¶ 10; 19-1 at 112:16-113:14). Specifically, Clyburn documented T.J.'s injuries to determine which had occurred before and during the school day. (Docs. 1-1 at 8 ¶ 10; 19-1 at 112:18-25). Clyburn further testified that she kept individualized, daily reports of all of her students. (Docs. 1-1 at 8 ¶ 10; 19-1 at 124:3-20). The ALJ found her testimony credible. (Doc. 1-1 at 8 ¶ 10).

After the second hearing, the ALJ concluded that Jenkins failed to show by a preponderance of the evidence that the Defendant did not provide T.J. a free and appropriate public education after August 10, 2010 or that the Defendant retaliated against Jenkins or T.J. for exercising her rights under IDEA. (Doc. 1-1 at 10-11).

### III.    DISCUSSION

#### A.  Standard of Review

Pursuant to IDEA, the Court must "receive the records of the administrative proceedings," hear additional evidence if a party requests it, and base "its decision on the preponderance of the evidence."  20 U.S.C. § 1415(i)(2)(C).  "After reviewing all the evidence, the District Court may grant relief without a trial by issuing what [the Eleventh Circuit has] called a judgment on the record."  *R.L. v. Miami–Dade Cty. Sch. Bd.*, 757 F.3d 1173, 1178 (11th Cir. 2014) (internal quotation marks omitted).  The Court "may issue a judgment on the record based on the preponderance of the evidence, even when facts are in dispute."  *Id.* (internal quotation marks and citation omitted).

Determining whether an educational program provides a free and appropriate public education as required by IDEA "is a mixed question of law and fact."  *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1284 (11th Cir. 2008).  Questions of law involving "the interpretation of a federal statute" are subject to *de novo* review.  *Id.* When reviewing the facts, the Court must give "due weight to the ALJ decision, and must be careful not to substitute its judgment for that of the state educational authorities."  *R.L.*, 757 F.3d at 1178 (internal quotation marks omitted).  The Court "is free to accept the ALJ's conclusions that are supported by the record and reject those that are not," and if the Court rejects the ALJ's conclusions, it must explain why.  *Id.*

#### B.  Analysis

The Defendant contends the ALJ's decisions should be upheld because the ALJ correctly ruled that Jenkins's claims based on events before August 10, 2010 are barred by the statute of limitations and that Jenkins failed to prove her FAPE and retaliation claims by a preponderance of the evidence.  The Defendant further argues that Jenkins

failed to establish a breach of a right to privacy claim or a claim under section 504 of the Rehabilitation Act[2] and that Jenkins is not entitled to the requested monetary relief.

### 1. Whether Jenkins's Claims Based on Events before August 10, 2010 are Time-Barred

IDEA sets a timeline for filing a due process complaint:

> A parent or agency shall request an impartial due process hearing within [two] years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

20 U.S.C. § 1415(f)(3)(C). Georgia law provides the same two-year statute of limitations. Ga Comp. R. & Regs. 160–4–7–.12(3)(a). The IDEA and the corresponding Georgia regulation also provide two exceptions to this statute of limitations. The timeline does not apply to a parent if:

> [T]he parent was prevented from requesting the hearing due to—(i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

20 U.S.C. § 1415(f)(3)(D); *accord* Ga Comp. R. & Regs. 160–4–7–.12(3)(a).

Jenkins contends the ALJ did not give "due consideration" to this Court's remand order because in that order the Court "affirmed that the claims of the Plaintiff were not time barred." (Doc. 5 at 3). That is not what this Court did. The Court remanded the case because the ALJ had not analyzed when Jenkins's claims accrued and particularly whether either of the tolling exceptions to the statute of limitations applied. *Jenkins*, 984

---

[2] The Defendant also contends that Jenkins's ADA claim premised upon the FAPE claim fails. However, Jenkins has not asserted such an ADA claim, but even if she had, the claim would be dismissed for the same reasons the section 504 claim is dismissed. *See Ortega v. Bibb Cty. Sch. Dist.*, 431 F. Supp. 2d 1296, 1298-1301 (M.D. Ga. 2006) (discussing the "substantially similar language" between the two claims).

F. Supp. 2d at 1378-79.  Notably, the Court stated the order did "not mean that a more developed record will not establish that Jenkins's claims are barred by the statute of limitations."  *Id.* at 1379 n.15.  On remand, the ALJ, with a more developed record, concluded that Jenkins's "IDEA claims relating to events that occurred prior to August 10, 2010, are barred by the two-year statute of limitations" because Jenkins "was at all times fully aware of the location, duration, and content of the educational services provided to her daughter" and was unable to demonstrate that an exception to the limitations period applied.  (Doc. 19-1 at 170-71, 175).

An IDEA claim accrues when "the parent or agency knew or should have known about the alleged action that forms the basis of the complaint."  20 U.S.C. § 1415(f)(3)(C).  Here, since November 2006, Jenkins has participated in every IEP meeting and received a copy of each IEP.  (Docs. 19 at 43:13-48:2, 56:17-60:3, 69:9-17, 74:4-75:15, 78:2-8, 87:5-88:7, 93:24-95:9, 99:8-100:5; 19-6 at 16-17, 27, 36; 19-7 at 18-72; 19-12 at 1-15).  These IEPs "contain[ed] a detailed discussion of T.J.'s disabilities, her goals and objectives, her current level of academic and developmental functioning (including issues with her behavior), her educational placement and services provided, and the results of … evaluations or assessments."  (Docs. 19-1 at 170 n.4; 19-6 at 16-17, 27, 36; 19-7 at 18-72; 19-12 at 1-15).  Jenkins's testimony at the statute of limitations hearing also demonstrates that she was aware of the Defendant's actions underlying her claims as the Defendant was committing them.  (Doc. 19 at 43:13-48:2).  And there is no evidence Jenkins lacked the necessary information to determine whether her daughter had been injured by the Defendant's actions.  Given this record,

the Court accepts the ALJ's conclusion that Jenkins's FAPE claims based on events before August 10, 2010 are time-barred, unless a tolling exception applies.

For the exception based on specific misrepresentations to apply, Jenkins must demonstrate the Defendant, as the local educational agency, specifically misrepresented "that it had resolved the problem forming the basis of the complaint" and that such a misrepresentation prevented Jenkins from requesting a due process hearing.  20 U.S.C. § 1415(f)(3)(D)(i).  The ALJ concluded this exception did not toll the limitations period because "there is no evidence that the [Defendant] made any misrepresentations" and "there is no evidence that any misrepresentations … prevented [Jenkins] from filing a due process complaint."  (Doc. 19-1 at 171).

Here, the evidence shows only one possible misrepresentation made to Jenkins. A representative from the Georgia Department of Education, the *state* educational agency, informed Jenkins that "[a]ll decisions arising from the complaint are final.  There is no appeal or reconsideration process."  (Doc. 19-8 at 1).  However, IDEA provides that misrepresentations by the *local* educational agency—Defendant Butts County School District—may toll the limitations period.  20 U.S.C. § 1415(f)(3)(D); 34 C.F.R. § 300.511(f)(1).  Jenkins has presented no evidence that the *Defendant* made a misrepresentation that prevented her from requesting a due process hearing. Accordingly, the Court accepts the ALJ's conclusion that this tolling exception does not apply.

For the exception based on withholding information to apply, Jenkins must demonstrate that she was prevented from requesting a due process hearing because the Defendant withheld IDEA-mandated disclosures, such as "written notice[s],

explanation, or form specifically required by the IDEA statutes and regulations." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 246 (3d Cir. 2012); *see also* 20 U.S.C. § 1415(f)(3)(D)(ii). In her amended complaint, Jenkins alleged the Defendant "never gave [her] a list of sources she could contact to obtain assistance in understanding the provisions of the IDEA" or a procedural safeguard notice as required by IDEA. (Doc. 19-3 at 101, 104). However, after reviewing the evidence, the ALJ concluded "the evidence showed that the [Defendant] provided [Jenkins] with … the IDEA-mandated disclosures." (Doc. 19-1 at 173).

The evidence in the record belies Jenkins's allegations and supports the ALJ's conclusion. Jenkins was informed of resources she could contact for assistance in understanding her parental rights. (Doc. 19-7 at 38, 71-72). The Court agrees this complied with IDEA. *See* 20 U.S.C. § 1415(c)(1)(D). The Court also agrees that Jenkins was provided notice of her parental rights and the required procedural safeguards notice and that these notices complied with IDEA. (Docs. 19-6 at 16-17, 27, 36; 19-7 at 18-72; 19-12 at 1-15). These notices explained that parents may file due process complaints, as well as the rights enumerated in 20 U.S.C. § 1415(d). (Docs. 19-7 at 19-20, 30-34, 47-50, 61-65). Also, multiple witnesses who were present at the IEP meetings testified that Jenkins received the requisite notices at the meetings. (Doc. 19 at 56:17-60:3, 69:9-17, 74:4-75:15, 78:2-8, 87:5-88:7, 93:24-95:9, 99:8-100:5). At the statute of limitations hearing, Jenkins questioned the Defendant's witnesses regarding the fact that no one asked her if she was dissatisfied with the educational services or wanted to file a due process complaint. (Doc. 19 at 88:13-89:6, 95:18-96:3, 100:25-102:6). However, that is not required under IDEA. *See* 20 U.S.C. § 1415(d)(2).

Accordingly, the Court accepts the ALJ's conclusion that there is no evidence the Defendant failed to provide Jenkins with the IDEA-mandated disclosures.

In sum, because Jenkins failed to show by a preponderance of the evidence that her FAPE claims based on events before August 10, 2010 were timely or that a tolling exception applied, the Court accepts the ALJ's conclusion that these claims are barred by the statute of limitations.

### 2.  Whether Jenkins Has Demonstrated Her FAPE and Retaliation Claims

#### a.  The FAPE claim

The ALJ concluded that Jenkins failed to show by a preponderance of the evidence that the Defendant did not "provide T.J. with a free appropriate public education from August 10, 2010 to the present."  (Doc. 1-1 at 10).  As discussed, the ALJ bifurcated the evidentiary hearings to address the statute of limitations issue first. The purpose of this was to determine which evidence could be presented and which should be excluded at the second hearing regarding the merits of Jenkins's claims. (Doc. 19 at 115:18-116:2).  On this issue, the Court notes the Eleventh Circuit's recent decision in *Phyllene W. v. Huntsville City Board of Education*, ___F. App'x___, 2015 WL 6575727 (11th Cir.).  There, the Eleventh Circuit held it was error for the "Hearing Officer" not to consider relevant evidence outside the statute of limitations.  *Id.* at *8. The Court reasoned that "[s]tatutes of limitations operate to bar *claims* that mature outside the applicable limitations period."  *Id.*  Thus, "*evidence* that is relevant to establish claims maturing within this limitations period is admissible."  *Id.* (citing *Draper*, 518 F.3d at 1287-88).

However, it is apparent Jenkins's FAPE claim is based on the Defendant's conduct prior to August 10, 2010.  Indeed, at the second hearing, Jenkins testified that she had "nothing … to say" if her claims based on the Defendant's conduct prior to August 10, 2010 are time-barred.  (Doc. 19-1 at 60:11-12).  Further, in October 2010, TJ. was placed in a regular school hours program to the satisfaction of Jenkins.  (*Id.* at 58:17-59:12; Doc. 19-6 at 57-58).  At the second hearing, Jenkins testified that she did not feel the Defendant had done wrong since her daughter returned to the regular full-day program.  (Doc. 19-1 at 58:17-59:12).  She also affirmed that she did not "have any complaints about anything that happened in 2011."  (*Id.* at 43:7-9).

In sum, Jenkins did not argue or present any evidence to demonstrate that the Defendant's conduct after August 10, 2010 established a FAPE claim at either hearing.  (*See* Docs. 19; 19-1).  Thus, the ALJ did not improperly exclude relevant evidence from *outside* the limitations period when Jenkins did not pursue a FAPE claim based on the Defendant's conduct *within* the limitations period.  And because Jenkins did not present evidence to support a FAPE claim, the Court accepts the ALJ's conclusion that Jenkins failed to prove by a preponderance of the evidence that the Defendant did not "provide [her daughter] with a free appropriate public education from August 10, 2010, to the present."  (Doc. 1-1 at 10).

Jenkins also conclusorily alleged that the Defendant's conduct underlying her FAPE claim violated section 504 of the Rehabilitation Act.[3]  (Doc. 19-3 at 100, 103).

> To make a claim under section 504 in the education context, something
> more than an IDEA violation for failure to provide a FAPE in the least

---

[3] The factual basis for this claim is identical to the factual basis for the FAPE claim adjudicated by the ALJ.  However, the ALJ did not explicitly address Jenkins's section 504 claim in her final decision.  Nevertheless, the Court has jurisdiction over the claim pursuant to 28 U.S.C. § 1331.  *See N.L. ex rel. Mrs. C. v. Knox Cty. Schs.*, 315 F.3d 688, 689 (6th Cir. 2003).

restrictive environment must be shown.  A plaintiff must also demonstrate some bad faith or gross misjudgment by the school or that he was discriminated against solely because of his disability.

*W.C. ex rel. Sue C. v. Cobb Cty. Sch. Dist.*, 407 F. Supp. 2d 1351, 1363-64 (N.D. Ga. 2005); *see also Andrew M. v. Del. Cty. Office of Mental Health and Mental Retardation*, 490 F.3d 337, 349 (3d Cir. 2007) ("[A] party may use the same conduct as the basis for claims under both the IDEA and [section 504]. … Congress specifically intended that [Education of the Handicapped Act, the predecessor to the IDEA,] violations could be redressed by § 504 ... as the legislative history reveals." (third alteration in original) (internal quotation marks and citation omitted)); *N.L.*, 315 F.3d at 695.  Having failed to establish her FAPE claim, Jenkins has also failed to establish a claim pursuant to section 504 of the Rehabilitation Act premised upon the same conduct.  In any event, there is simply no evidence of bad faith, gross misjudgment, or discrimination because of T.J.'s disability by the Defendant.

### b.  The retaliation claims

Jenkins contends the Defendant retaliated against T.J. by failing to follow school protocol when bugs were discovered on her, by filing DFCS reports regarding the bug incidents and regarding T.J.'s "'unusual behavior' that was described as sexual in nature," and by diagramming "any alleged marks, scars[,] and/or injuries."  (Doc. 5 at 4). Jenkins also argues the Defendant violated the American with Disabilities Act ("ADA") and section 504 of the Rehabilitation Act by these actions.  (*Id.*; Doc. 19-2 at 138).

The Eleventh Circuit has recognized an implicit authorization of retaliation claims under IDEA.  *See M.T.V. v. DeKalb Cty. Sch. Dist.*, 446 F.3d 1153, 1158-59 (11th Cir. 2006).  Further, "IDEA allows plaintiffs to seek 'remedies available under the

Constitution, [the ADA, Section 504], or other Federal laws protecting the rights of children with disabilities." *Id.* at 1157-58 (alteration in original) (quoting 20 U.S.C. § 1415(l)). The ADA and section 504 of the Rehabilitation Act provide for retaliation claims, which are analyzed under the *McDonnell-Douglas* framework in Title VII cases. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001); *Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000) ("Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases" and "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa"); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1997); *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 891 (11th Cir. 2007). "To establish a *prima facie* case of retaliation, [Jenkins] must establish (1) a statutorily protected expression; (2) adverse action; and (3) a causal link between the protected expression and the adverse action." *Lewellyn v. Sarasota Cty. Sch. Bd.*, 2009 WL 5214983, at *12 (S.D. Fla.) (citing *Goldsmith v. City Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)). If the *prima facie* case is established, "the [D]efendant may come forward with legitimate reasons for the [challenged] action to negate the inference of retaliation." *Goldsmith*, 996 F.2d at 1163. If the Defendant meets this burden, Jenkins "then bears the burden of proving by a preponderance of the evidence that the reasons offered by the [D]efendant are pretexual." *Id.*

It appears the ALJ assumed *arguendo* that Jenkins established a *prima facie* case and concluded that Jenkins failed to prove by a preponderance of the evidence that the Defendant's legitimate, non-retaliatory reasons for its actions were pretextual. (Doc. 1-1 at 10-11).

As to the bug incidents, Jenkins contends the Defendant retaliated against T.J. by not following school protocol and by filing a DFCS report about the bugs.  (Doc. 19-1 at 62:11-19).  The Defendant proffered a legitimate and non-retaliatory reason that it simply used the head lice policy when T.J., after her teacher Amy Clyburn found bugs on her, was prevented from returning to school until a private physician diagnosed the nature of the possible "bug infestation" and provided a clearance letter to return to school.  (*Id.* at 94:9-19; Doc. 19-11 at 111).  The head lice policy was the only one regarding bugs.  (Doc. 19-1 at 91:24-92:6, 92:21-23).  Because this policy stated that the health department is to provide the clearance letter, Jenkins felt it retaliatory that the Defendant told her to get a letter from a private physician.  (Docs. 19-1 at 62:7-19; 19-11 at 147-48).  However, the principal testified that she understood the policy to allow for a clearance letter from either a private physician or the health department and that she would have followed the same method for any student.  (Doc. 19-1 at 97:19-20, 99:2-8).  The ALJ found this testimony credible, as does the Court.  (Doc. 1-1 at 6).  Further, Jenkins presented no evidence beyond conclusory allegations and testimony that the Defendant's reasons for its actions were pretext for retaliation.  Given this record, the Court accepts the ALJ's conclusion that Jenkins failed to demonstrate a retaliation claim based on this conduct.

Regarding the DFCS report about the bug incidents, the Defendant proffered a legitimate and non-retaliatory reason that Clyburn filed the report because she "was concerned about possible harm to [T.J.]" after finding bugs on her clothing and diaper area and thus was obligated as a mandatory reporter to inform DFCS about her concerns of abuse.  (Docs. 19-1 at 111:17-22; 19-11 at 106-108).  *See* O.C.G.A. § 19-7-

5(c)(1)(H) and (c)(2).  Jenkins offered no evidence beyond conclusory allegations and testimony to demonstrate that the Defendant's reasons for its actions were pretext for retaliation.  Given this record, the Court accepts the ALJ's conclusion that Jenkins failed to demonstrate a retaliation claim based on this conduct.

As to the DFCS report about T.J.'s behavior appearing sexual in nature, the Defendant proffered a legitimate and non-retaliatory reason that Clyburn filed the report because she had reasonable cause to suspect child abuse and thus was required to file a report as a mandatory reporter in Georgia.  The ALJ found Clyburn had reasonable cause to suspect child abuse, and the Court agrees.  (Doc. 1-1 at 7, 11).  T.J., who is usually non-verbal, said "Stop boy" as she pulled at her pants to stop an "imaginary force [from] trying to pull them down," appeared to be "shooing something away," and said "Baby, Baby, Baby" in an intimate tone.  (Docs. 19-1 at 110:11-17; 19-11 at 103).  Clyburn was reasonably concerned about possible abuse, given T.J.'s new behaviors, severe disabilities, and inability to communicate.  (Docs. 19-1 at 110:15-111:2, 129:19-24; 19-11 at 101-104).  Jenkins offered no evidence beyond conclusory allegations and testimony to demonstrate that the Defendant's reasons for its actions were pretext for retaliation.  Given this record, the Court accepts the ALJ's conclusion that Jenkins failed to demonstrate a retaliation claim based on this conduct.

As to diagramming T.J.'s marks and injuries, the Defendant proffered a legitimate and non-retaliatory reason that Clyburn made these diagrams out of concern for T.J.'s welfare because of her self-injurious behavior.  (Docs. 19-1 at 112:18-25; 19-10 at 51-69).  Clyburn testified that she made the diagrams to determine which injuries occurred before and during school and that she marked only those injuries that were observable

during changing time.  (Doc. 19-1 at 112:18-25, 113:1-14).  She further testified that she

kept daily, individualized reports on all of her students.  (Doc. 19-1 at 124:3-20).  At the

second hearing, Jenkins took issue with the fact that Clyburn did not begin diagramming

T.J.'s marks and injuries until August 2013 at the earliest, but Jenkins offered no

evidence beyond conclusory allegations and testimony that the reasons for the

diagrams were pretext for retaliation.  (Doc. 19-1 at 74:1-23, 123:13-16).  In any event,

Jenkins acknowledged that the Defendant had been documenting T.J.'s marks, injuries,

and behavior for years.  (Docs. 19-1 at 77:3-81:25, 123:1-12; 19-8 at 47-101; 19-9 at 1-

143; 19-10 at 1-33).  Given this record, the Court accepts the ALJ's conclusion that

Jenkins failed to demonstrate a retaliation claim based on this conduct.[4]

In sum, Jenkins has failed to demonstrate by the preponderance of the evidence

that the Defendant did not provide T.J. a free and appropriate public education since

August 10, 2010 or that the Defendant retaliated against Jenkins or T.J.[5]  Jenkins's

---

[4] In filing this appeal of the ALJ's decision, Jenkins also alleged that the Defendant "violat[ed] the
Plaintiff[']s right to privacy 5 U.S.C. [§] 552a" by presenting the diagrams of T.J.'s marks and injuries to
the ALJ.  (Doc. 5 at 2).  However, the parties jointly stipulated that these exhibits may be tendered at the
hearing.  (Docs. 19-1 at 14; 19-2 at 53-57).  In any event, as the Court stated in a previous order
regarding this same claim, Jenkins's claim pursuant to 5 U.S.C. § 552a fails because the Privacy Act
provision pertaining to disclosure of individuals' records deals with the conduct of *federal agencies*.
*Jenkins v. Smith Welch Webb & White, et al.*, No. 5:15-CV-97 (MTT), Doc. 4 at 5-6 (citing *Schwier v. Cox*,
340 F.3d 1284, 1287-88 (11th Cir. 2003)).  Accordingly, Jenkins's claim is without merit.

[5] At the second hearing, in her response brief to the Defendant's motion for judgment on the record, and
in her due process hearing request, Jenkins conclusorily asserted that the Defendant discriminated
against T.J. as well.  (Docs. 19-1 at 62:7-19; 19-2 at 138; 21 at 3 ¶ 18).  Section 504 of the Rehabilitation
Act and the ADA provide for discrimination claims which are analyzed under the same *McDonnell-
Douglas* framework as the retaliation claims.  *See Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155
(11th Cir. 2002); *Wascura*, 257 F.3d at 1242.  Thus, the discrimination claims fail for the same reason the
retaliation claims fail: Jenkins has not provided sufficient evidence that the Defendant's legitimate, non-
discriminatory reasons for its actions were pretextual.

section 504 claim based on the same facts as the FAPE claim also fails on the merits.

Accordingly, Jenkins's claims for monetary relief are moot.[6]

## IV.   CONCLUSION

For the foregoing reasons, the Defendant's motion for judgment on the record is

**GRANTED**.  (Doc. 16).  Jenkins's claims are **DISMISSED**.

**SO ORDERED**, this 24th day of February, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT

---

[6] The Defendant also requests that the Court reconsider its previous ruling that Jenkins's prior motion for reconsideration before the ALJ tolled the 90-day appeal period.  (Doc. 17 at 24-25).  The Court declines to reconsider its ruling, as the issue is now moot.